**Andrew B. Adair, Appellant, v. William S. Timblin et al., Appellees.**

**Gen. No. 19,311.**

1. LIBEL AND SLANDER, § 27*—*when publication constitutes a libel.* A malicious publication expressed in printing or writing tending to injure the reputation of a person and expose him to public hatred, contempt or ridicule is a libel.

2. LIBEL AND SLANDER, § 56*—*when publications concerning a member of a Union are but conditionally privileged and actionable per se.* In an action for libel, a declaration in the first two counts alleged the defendants maliciously published a printed circular purporting to be a statement of an association of the members of a certain Union, of which plaintiff was a member, to the members

---

*See Illinois Notes Digest, Vols. XI to XV and Cumulative Quarterly, same topic and section number.

of the Union, that plaintiff had "been conniving with the proprietors of the Drover's Journal for the purpose of interfering with and controlling certain of our Union's activities and defeating its will and beneficial aims, and also for the purpose of depriving certain members of said Union of their means of gaining a livelihood;" and a third count of the declaration alleged that defendants published a printed circular, signed by one of the defendants, as follows: "Self-serving Trade Unionism. The above caption applies particularly to A. B. Adair. * * * Andy Adair has been the nigger in the woodpile for fifteen years or more. * * * Adair's Italian hand is seen. Had Adair not been Adair I now would be at work in the Drover's Journal office." *Held*, that the publications were not absolutely privileged, that if privileged they were only conditionally privileged, and that the publications were each *per se* actionable.

3. LIBEL AND SLANDER, § 90*—*sufficiency of averments as to malice when publication is conditionally privileged.* Where a publication alleged to be libelous is only conditionally privileged, it is not necessary to aver in the declaration the facts constituting malice, it is enough to allege that the writing was maliciously published; but it is not necessary to use the word "maliciously," for the word "falsely" alone is sufficiently expressive of a malicious intent.

Appeal from the Circuit Court of Cook county; the Hon. ADELOR J. PETIT, Judge, presiding. Heard in this court at the March term, 1913. Reversed and remanded. Opinion filed May 4, 1914. Rehearing denied May 18, 1914.

EARL C. HALES and WILLARD MOFFETT, for appellant; JOHN J. SONSTEBY, of counsel.

WILLIAM A. JENNINGS and EVERETT M. SWAIN, for appellees.

MR. PRESIDING JUSTICE BAKER delivered the opinion of the court.

In an action for libel the Circuit Court sustained a demurrer to the declaration, entered a judgment of *nil capiat* and the plaintiff appealed. The matters alleged to be libelous in the first two counts are contained in a printed circular purporting to be a statement of the Drovers' Journal Chapel, an association of the

members of Typographical Union 16, employed in the office of the Drovers' Journal, to the members of said Union. The declaration averred that each member of said Union took an obligation that he would not wrong a member, or see him wronged if in his power to prevent, and each of said counts averred that the defendants in said circular wickedly and maliciously published of and concerning the plaintiff false, defamatory and libelous matters *inter alia;* that the plaintiff had "been conniving with the proprietors of the Drovers' Journal for the purpose of interfering with and controlling certain of our Union's activities and defeating its will and beneficial aims, and also for the purpose of depriving certain members of the Union of their means of gaining a livelihood." The declaration also averred that the plaintiff was a member of said Union and for thirty years had been foreman of the Daily News composing room, where a large number of printers were employed who were all members of said Union.

The matters alleged to be libelous in the third count are contained in a printed circular signed by one of the defendants and addressed to, "My fellow members of Chicago Typographical Union No. 16." The count averred that the defendants, in said circular, wrongfully and maliciously published of and concerning the plaintiff a certain other false, malicious and defamatory libel containing *inter alia* the false, etc., matters following: "Self-serving Trade Unionism. The above caption applies particularly to A. B. Adair. * * * Andy Adair has been the nigger in the woodpile for fifteen years or more. * * * Adair's Italian hand is seen. Had Adair not been Adair I now would be at work in the Drovers' Journal office."

A malicious publication expressed in printing or writing tending to injure the reputation of a person and expose him to public hatred, contempt or ridicule is a libel. In view of the allegation in the declaration that the plaintiff was a member of Typographical Union 16 and foreman of a printing office in which

many members of the Union were employed, the charge that he had been "conniving with the proprietors of the Drovers' Journal for the purpose of defeating the will and beneficial aims of the Union and for the purpose of depriving certain members of the Union of the means of gaining a livelihood;" the charge that the caption "Self-serving Unionism" applied particularly to the plaintiff; the charge that plaintiff had been for fifteen years "the nigger in the woodpile;" the charge that but for plaintiff the defendant whose name appears as the signer of the circular set forth in the third count, and who it is stated therein was a member of said Union, "would now be at work in the Drovers' Journal office," and each of said charges must have been intended by the publishers to injure the reputation of the plaintiff. Such charges were well calculated to injure the reputation of the plaintiff among the members of the Typographical Union of which he was a member, especially as the position he held as foreman of the Daily News printing office gave him power to benefit or injure members of the Union.

The publication alleged to be libelous is not of words absolutely privileged like words used in a judicial or parliamentary proceeding, and if privileged at all are only conditionally privileged. That a communication is so privileged "means no more than that the occasion of making it rebuts the *prima facie* inference of malice arising from the publication of matter prejudicial to the character of the plaintiff and throws on him the *onus* of proving malice in fact; but not of proving it by extrinsic evidence only; he has still the right to require that the alleged libel itself be submitted to the jury, that they may judge whether there is evidence of malice on the face of it." *Wright v. Woodgate,* 2 Cromp., M. & R. 573. It is not necessary in such a case to aver, in the declaration, the facts constituting malice, it is enough to allege that the writing was maliciously published; but it is not necessary to use the word "maliciously," for the word "falsely" alone has been held to be sufficiently expressive of a malicious in-

tent.  Williams' Saunders, 242 b. n. 1; *White v. Nicholls,* 3 How. (U. S.) 266.

But each count of the declaration in this case charges the defendants with having wickedly and maliciously composed and published a false, malicious and defamatory libel concerning the plaintiff.  That the matters alleged to be libelous were false and were published maliciously was admitted by the demurrer.

We think each of the publications charged is *per se* actionable.  The judgment of the Circuit Court is reversed and the cause remanded.

<div align="right">

*Reversed and remanded.*