## SARATOGA VICHY SPRING CO. v. SARATOGA CARLSBAD CORPORATION et al.

District Court, S. D. New York.

Feb. 13, 1942.

Emery, Varney, Whittemore & Dix, of New York City (Manvel Whittemore, of New York City, of counsel), for plaintiff.

Anthony M. Maoriello, of New York City (Christopher C. Cousins and R. B. Cousins, both of New York City, of counsel), for defendants.

CONGER, District Judge.

This is an action for trade mark infringement and for unfair competition. The plaintiff is a New York corporation having been organized in 1876 and having been actively engaged in business ever since. The defendant Saratoga Carlsbad Corporation is a New York corporation having been organized in 1939. The defendant Carafano was and is the President of the defendant corporation.

During the trial I dismissed the complaint as to the defendant Young because he actually severed his connection with the defendant corporation in July, 1940.

Both corporate parties are engaged in putting out to the trade a mineral spring water which is bottled at Saratoga, New York. The plaintiff has been in the business for about 65 years.

Defendants are not bottlers but are either distributors or wholesalers of a mineral water from a spring at Saratoga. The water sold by defendants is bottled and sold to them by one Roland Miller.

There is no question of jurisdiction raised. It has been stipulated that both corporate parties are engaged in interstate commerce.

If plaintiff is correct in its contention here as to the charges of infringement and unfair competition, it is no defense, that the defendants are merely sellers or wholesalers or distributors and not the original bottler or manufacturer. Hansen v. Seigel-Cooper Co. et al., C.C., 106 F. 690; Pro-phy-lac-tic Brush Co. v. Abraham & Straus, Inc., D.C., 11 F.Supp. 660.

On the issue of infringement, plaintiff's contention is that it has a valid trade mark "Saratoga Vichy" which was registered under the 10-year proviso of Section 5 of the Federal Trade Mark Act, 15 U.S.C.A. § 85, which provides for the registration of "any mark" used by the applicant in commerce, which "was in actual and exclusive use, as a trade mark by the applicant for 10 years next preceding February 20, 1905."

I am satisfied that plaintiff is right in its contention and I so hold; i. e. that plaintiff had and has a valid trade mark as claimed and that it has been infringed by defendants.

I base my conclusion on the following:

Plaintiff's registration of its trade mark was duly and regularly effected on March 10, 1920: This gave it life for 20 years. It duly renewed on October 24, 1939, for 20 years more. It is still in force and effect.

If the plaintiff has a valid trade mark properly registered under Section 5 of the Act, then it has presumptively established that it is the owner of its claimed copyright. I find no evidence in the case which destroys that presumption.

The fact that the word combination claimed by the plaintiffs is composed of generic and descriptive words avails not under this registration. As the court said in Nashville Syrup Co. v. Coca-Cola Company, 6 Cir., 215 F. 527, 529, 530, Ann.Cas. 1915B, 358:

"We take it [the decision in the Davids case (Davids Co. v. Davids), 233 U.S. 461, 34 S.Ct. 648, 58 L.Ed. 1046] as holding that the statute was not intended to permit, under this clause, an ineffective and useless registration, and so, in effect, holding that the statute removed from descriptive words which had been exclusively used as a mark in interstate commerce for 10 years the bar or disability caused by their descriptive character, and made them, after that probation, subject to exclusive appropriation with the same effect, in the main, as if

the disability had never existed. * * * Since it appears that plaintiff had enjoyed the exclusive use of the name 'Coca Cola' for more than 10 years before 1905, and that there was due registration under the act of 1905, it follows that plaintiff's exclusive rights as a trade-mark owner and as defined in the Davids case, are established."

It is immaterial that these words "Saratoga Vichy" may once have been descriptive or that to a degree they may be so still. Coca-Cola Company v. Old Dominion Beverage Corporation, 4 Cir., 271 F. 600.

■ The next matter to consider is whether or not the plaintiff had exclusively used its claimed combination, Saratoga Vichy, in interstate commerce during the ten-year period from 1895 to 1905. I think the evidence clearly shows that it did. Defendant has made no showing in this regard.

I think that it has been well established by the testimony that plaintiff has used the words "Saratoga Vichy" since 1876 down to the present day and has never acquiesced in its use by others, and that its use from 1876 to 1928 was exclusive and that after that it prosecuted claims of infringers promptly, zealously and successfully.

I do not regard the decision in La Republique Francaise et al. v. Saratoga Vichy Springs Company, 191 U.S. 427, 24 S.Ct. 145, 48 L.Ed. 247, decided in 1903, as in any way holding contra to plaintiff's contention here.

In that case, complainants sought to enjoin this present plaintiff from using the word "Vichy", contending that complainants (Republique of Francaise) owned an exclusive trade mark right in that word. The court held that they had lost any right to the trade-mark "Vichy" by their general acquiescence in its use by others.

That is not quite the point here. I do not hold, that defendants may not use the word "Vichy", or that they may not use the name "Saratoga" in connection with their product, but I do hold that they may not use the combination together, "Saratoga Vichy", which I find by long usage, exclusively by the plaintiff (since 1873), has acquired a secondary meaning. Down through the years (from 1873), the plaintiff has been bottling and selling its product under the distinctive name "Saratoga Vichy". It was no inconsiderable business; ranging from 481,000 bottles in 1899 to 6,000,000 bottles in 1941.

A bit of interesting history concerning Saratoga Springs, its mineral water and plaintiff's product, may be found in the La Republique Francaise v. Saratoga Vichy Springs Co., 2 Cir., 107 F. 459, 460, 65 L.R.A. 830.

"The township of Saratoga Springs has long been known as abundant in mineral springs, the waters of which are distinguished by different names, and in March, 1872, the geyser or spouting spring of the defendant was discovered in that town. The water is alkaline, is regarded by medical men as a valuable mineral water, and has been recommended extensively by the defendant as having a wonderful similarity to the Vichy waters of France. The water was bottled and sold in 1873, and thereafter until 1876, by the owners of the spring, when the defendant, under the name of the Saratoga Vichy Spring Company, became the owner, and has since sold the water extensively under the name of Saratoga Vichy Water, or Natural Saratoga Vichy Water. The bottles, circulars, and advertisements have invariably used the words 'Saratoga Vichy.' The water. is highly charged with natural carbonic acid gas, and is bottled under a high pressure of that gas."

This it seems to me rather confirms plaintiff's contention as to its long use of the name "Saratoga Vichy".

■ Defendant's labels originally contained the words Saratoga Carlsbad Vichy which was later changed to Saratoga Natural Vichy. I am of the opinion that both labels infringe plaintiff's copyright: I am all the more convinced of this when I examine defendant's labels; the words Saratoga Vichy are prominently displayed; the labels simulate plaintiff's labels in form, arrangement, color and style of printing.

On defendant's bottle there was originally a narrow neck band, on which was printed "Saratoga Carlsbad Vichy." This of course under my ruling is objectionable. They now use a neck band with the words "Saratoga Carlsbad Springs" which is not objectionable. The addition of the word Carlsbad on one of defendant's labels and the word Natural in the other does not help the defendant. Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195; Menendez v. Holt, 128 U.S. 514, 9 S.Ct. 143, 32 L.Ed. 526.

■ I also hold the defendants liable for unfair competition. Much that I have al-

ready said applies to this branch of the case.

The long continued use by the plaintiff of the name "Saratoga Vichy" has given to this combination a secondary meaning. I am convinced that these words have come to mean the plaintiff and its product. This plaintiff has a right to be free from the competitive use of this name.

The right arises not from trade mark Acts but from the fact "Saratoga Vichy" has come to indicate that the goods in connection with which it is used are the goods manufactured by the plaintiff. When a name is endowed with this quality, it becomes a mark entitled to protection. The essence of the wrong from the violation of this right is the sale of goods of one manufacturer for those of another. Armstrong Paint & Varnish Works v. Nu-Enamel Corp., supra. For a case similar on the facts see National Water Co. v. O'Connell et al., C.C., 159 F. 1001.

Having in mind the secondary meaning of plaintiff's mark, the similarity of defendant's bottles, the labels which I have heretofore referred, one cannot escape the conclusion that there has been an intentional simulation on the part of the defendant.

I can realize that defendant's product might easily be palmed off as plaintiff's; that confusion would arise by reason of this similarity; that a customer might not only be confused but fooled. There are no instances of confusion proved but this is not necessary in a case where there is such a great similarity of name and label. I am satisfied, that the similarity of name and label in this case, is calculated to and intends to create confusion.

The plaintiff is entitled to a judgment for the relief demanded in the complaint against both the corporate defendant and the defendant Carafano.

The defendant should be enjoined from using the labels now in use and also the former label used by them.

Generally they should be enjoined from advertising or selling their product as Saratoga Carlsbad Vichy or as Saratoga Water or Vichy and from advertising or selling any mineral water other than plaintiff's, under a name of which the words Saratoga and Vichy are a part and from selling water in bottles having a label on which both words Saratoga and Vichy are prominently displayed or in green bottles

bearing a label which is predominately yellow and has either the word Saratoga and Vichy prominently displayed thereon.

Plaintiff asks only for nominal damages, I therefore do not direct an acounting of profits earned.

Settle order on notice.