**SECOND NAT. BANK OF SAGINAW v. WOODWORTH, Collector of Internal Revenue.**

**No. 9751.**

District Court, E. D. Michigan, S. D.

Dec. 31, 1931.

George G. Witter and Marc F. Mitchell, both of Los Angeles, Cal., and Theodore B. Benson, of Washington, D. C., for plaintiff.

Gregory H. Frederick, U. S. Atty., Charles B. W. Aldrich, and David A. Wolff, Asst. U. S. Attys., all of Detroit, Mich., for defendant.

SIMONS, District Judge.

This is a suit for the recovery of an additional estate tax paid under protest by the executor of the estate of Wellington R. Burt, deceased. The case was tried before the court without a jury; trial by jury having been expressly waived by written stipulation. The facts are substantially as follows:

Wellington R. Burt, a citizen of Michigan residing in Saginaw, in this district, died on March 2d, 1919. The plaintiff was made executor under the will on August 13, 1920, and continued as executor until May 24, 1922, on which date it was discharged as executor of the estate and appointed testamentary trustee, in which capacity it has ever since acted, and is still acting. On August 14, 1920, the executor filed a federal estate tax return for the decedent, and the tax shown thereon was assessed and paid. Thereafter the Commissioner assessed an additional tax in the amount of $662,625.89, which resulted from increasing the net value of the estate subject to taxation by adding thereto various gifts of bonds, stocks, and other property made by the deceased to his son and daughters in 1915, some four years prior to his death. The plaintiff under date of June 21, 1923, filed a claim for refund, and, while the claim was receiving consideration by the Commissioner of Internal Revenue, filed a suit in the Court of Claims, which suit set forth, among others, the identical grounds upon which this case is predicated. On January 26, 1926, while the case was pending in the Court of Claims, the plaintiff and the Commissioner of Internal Revenue executed, and the Secretary of the Treasury approved, an agreement whereby a determination was made as to the amount of tax liability. The determination was accepted by the plaintiff, and resulted in a refund to it of $249,220.14. Thereafter, on July 21, 1926, counsel for plaintiff filed a motion in the Court of Claims for dismissal of the suit there pending, which motion recited that the claim for refund sued upon had been reopened by the Commissioner of Internal Revenue, allowed in part, and the amount of the allowance paid to the plaintiff, and that the parties had entered into an agreement in accordance with section 1106 (b), of the Revenue Act of 1926 (26 USCA § 1249 note), and consenting to the final determination and assessment of the estate tax, whereupon the Court of Claims entered an order dismissing the cause as of October 18, 1926. Thereafter the plaintiff, as testamentary trustee of the de-

cedent's estate, filed with the probate court for the county of Saginaw a petition reciting the action and proceeding it had taken with respect to the claim of the estate for the refund.

The probate court entered an order on the said petition stating that the trustee's action had been taken without power or authority, and without the sanction or knowledge of the court. The order expressly rejected the attempted settlement, and directed the trustee to take all necessary steps to recover the total amount of tax imposed upon the said gifts, and to report its actions and doings to the court. In compliance with this order, the plaintiff on June 4, 1927, filed a claim for refund in the sum of $256,888.61, which was rejected by the Commissioner of Internal Revenue on the ground that the agreement previously entered into had settled all questions between the parties. On April 6, 1928, without first tendering back to the government the amount refunded, a second petition was filed in the Court of Claims by the plaintiff, based upon the rejection of the claim for refund, and upon demurrer to the petition the court held that the claim set up therein was res adjudicata. The demurrer was sustained, and the petition dismissed. Plaintiff thereafter applied to the Supreme Court of the United States for a writ of certiorari, which was denied, whereupon, on October 2d, 1929, the plaintiff instituted the instant action against Fred L. Woodworth, collector of internal revenue, to which, under the plea of general issue, special defenses were interposed by the defendant, including the defense of res adjudicata.

The issues involved are:

(1) Was the additional estate tax here sought to be recovered unlawfully collected?

(2) If unlawfully collected, is the plaintiff estopped from recovery (a) by previous litigation against the United States in the Court of Claims; (b) by the instrument signed by the Testamentary Trustee purporting to close the case under section 1106 (b) of the Revenue Act of 1926; (c) by the fact that no tender was made in the court of a previous refund?

I shall consider first the question of estoppel, and as bearing upon it the effect of the previous litigation in the Court of Claims, and the decision therein made, because it is obvious that, if that issue is decided against the plaintiff, this suit must fail, and it will become unnecessary to pass upon the remaining issues in the case. There

were two actions brought by the plaintiff in the Court of Claims for the recovery of the refund claimed in this proceeding. The first action was dismissed by an order based upon the settlement agreement. In the second action, the Court of Claims held that the order of dismissal in the first action was res adjudicata, and a bar to the second suit. Second National Bank of Saginaw v. United States, 66 Ct. Cl. 166, certiorari denied 280 U. S. 553, 50 S. Ct. 15, 74 L. Ed. 609. I confine my consideration strictly to the effect of the decision in the case above cited. The parties to that action were the plaintiff and the United States of America. The parties to the instant suit are the plaintiff and the collector of internal revenue. The plaintiff contends that this difference in parties avoids the bar of res adjudicata, and relies principally upon the decision of the Supreme Court in the case of Sage v. United States, 250 U. S. 33, 39 S. Ct. 415, 416, 63 L. Ed. 828, wherein it was held that a suit against the collector is not a bar to a subsequent suit against the United States, and wherein Mr. Justice Holmes used the following pertinent language:

"But no one could contend that technically a judgment of a District Court in a suit against a collector was a judgment against or in favor of the United States. It is hard to say that the United States is privy to such a judgment or that it would be bound by it if a suit were brought in the Court of Claims. The suit is personal and its incidents, such as the nature of the defenses open and the allowance of interest, are different. It does not concern property in which the United States asserts an interest on its own behalf or as trustee, as in Minnesota v. Hitchcock, 185 U. S. 373, 388, 22 S. Ct. 650, 46 L. Ed. 954. At the time the judgment is entered the United States is a stranger. Subsequently the discretionary action of officials may, or it may not, give the United States a practical interest in the amount of the judgment, as determining the amount of a claim against it, but the claim would arise from the subsequent official act, not from the judgment itself."

This is not the ground, however, upon which the case was decided, for Mr. Justice Holmes continues significantly: "But perhaps it would be enough to say that if the judgment otherwise were a bar the bar would be removed by the subsequent enactment of the Act of July 27th, 1912, c. 256, 37 Stat. 240, upon which, as well as the act of 1902, this claim is based."

674

It is not necessary, however, to regard the argument of Mr. Justice Holmes as dicta, nor to ignore it. There is an important distinction between the facts of the case at bar and those of the Sage Case. The judgment pleaded in the latter as a bar to the action therein was a judgment against the collector. The judgment herein set up as a bar is a judgment against the United States. A collector of internal revenue is a public officer, and in that capacity is an agent or trustee for the government. It is not contended here that the defendant collector acted in anything but his official capacity. It is not contended that the tax paid is now in his possession, or that he has failed to turn it over to the government. While the instant suit is against the collector personally, it is against him by reason of his acts as collector, and not otherwise. It may be conceded that a judgment against an agent does not bind the principal, but that is not to say that the converse is true, and that a judgment against the principal is not a bar to an action against the agent, where the latter is in privy with the former in respect to the subject-matter of the suit.

Bank of Kentucky v. Stone et al., 88 F. 383, was a case decided by the United States Circuit Court for the District of Kentucky, wherein a bill was filed by the plaintiff to restrain the assessment and collection of certain taxes for the benefit of the city of Louisville. The bill was filed against the board of assessors. There had been a prior adjudication in relation to the same taxes in a suit in which Franklin county, wherein Louisville is situated, was a party. It was held, Judge Taft writing the opinion, that a judgment enjoining a town and county from enforcing an illegal tax is conclusive in a subsequent suit to restrain the board of assessors of such county and town from certifying such tax for collection. The members of the board, being but the agents of the real parties in interest, are in respect to the former judgment privy to the county and city. This case was appealed to the Supreme Court of the United States, and the judgment therein affirmed. Stone v. Bank of Kentucky, 174 U. S. 799, 19 S. Ct. 881, 43 L. Ed. 1187. See, also, Cuneo

Importing Co. v. American Importing Co. (D. C.) 241 F. 421, affirmed (C. C. A.) 247 F. 413; Warren Featherbone Co. v. De Camp (C. C.) 154 F. 198. One need only test the question of privity between the collector and the government in order to determine that it exists by contemplating what the situation would be if judgment in the instant suit is had against the defendant. As was pointed out by Mr. Justice Holmes in the Sage Case, such judgment is to be paid by the United States. The collector is exempted from execution if a certificate is granted by the court that there was probable cause for his act, and that there was a permanent appropriation for the refunding of taxes illegally collected. Certainly in this case the collector would not pay the judgment personally, but would seek to be exempted from execution by making application for a certificate of probable cause under the statute. There would be no reason to deny him such certificate. The government would then be in the position of assuming an obligation for a claim previously litigated in a proper court and upon which a decision had been rendered in its favor. Can it then be said that there is no privity between the collector and the government in a suit brought against the government? I think not. And this is a far different thing than to say, as Mr. Justice Holmes did, that there is no privity between the government and the collector in a suit brought against the collector personally. The collector in this suit can make no defenses that were not open to the United States before the Court of Claims. The issues here are precisely the same issues as were presented to that court. They might not be if it were the other way around. To say that the principal is not bound by judgment against an agent is not the same thing as saying that the agent is not bound by a judgment against the principal in respect to the subject-matter of the agency. I conclude from the foregoing that the dismissal of the second action brought by the plaintiff herein in the Court of Claims is a bar to his recovery here. Judgment may be entered in favor of the defendant and as against the plaintiff for no cause of action.